IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE LEENHEER,

      Plaintiff,

v.                                              CA  2:22-cv-147

GUIDEHOUSE, f/k/a NAVIGANT,

      Defendant,                      **JURY TRIAL DEMANDED**

## COMPLAINT

AND NOW comes Plaintiff, CATHERINE LEENHEER, by and through her attorney, John Newborg, Esquire, and files the following Complaint against Defendant, GUIDEHOUSE, f/k/a NAVIGANT averring as follows:

### JURISDICTION

1. This action is brought and jurisdiction lies pursuant to Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3)

2. Jurisdiction also lies pursuant to 28 U.S.C. §1331.

3. Jurisdiction over the Plaintiff's state law claims lies pursuant to 28 U.S.C. §1367.

4. Plaintiff has complied with all conditions precedent to the filing of this Complaint as follows:

    (a) Plaintiff filed her Charge of Employment Discrimination based upon retaliation with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission on August 12, 2020, a date within 180 days of the unlawful employment practices alleged in this complaint.

    (b) Plaintiff received a Right to Sue notice from the Equal Employment Opportunity Commission October 29, 2021.

       (c) Plaintiff filed this Complaint within 90 days of receipt of the Right to Sue Notice.

5. Defendant employs more than 15 employees and is an "employer" as defined in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(h), *et seq*.

6. Plaintiff was an employee of the Defendant.

7. Plaintiff was a resident of Western Pennsylvania using her home as her base from which Plaintiff performed her duties providing services to institutions located throughout Western Pennsylvania.

8. Plaintiff would have continued to work in Western Pennsylvania if Defendant had not committed the unlawful employment practices alleged in this complaint.

9. Defendant does business throughout the State of Pennsylvania including Western Pennsylvania.

**PARTIES**

10. Plaintiff is an adult individual residing at 406 Isabella Court, Zelienople, PA 16063.

11. Defendant's national headquarters is located at 150 North Riverside Plaza Suite 2100 Chicago, IL 60606 and having another principal office in Philadelphia, PA

12. Defendant is a global management consulting firm serving both the public and commercial sectors.

13. In October 2019, Guidehouse completed the purchase of Navigant Consulting, Inc., which provided advisory, outsourcing, and technology services primarily to clients in the healthcare, financial services, and energy industries.

14. At all times material hereto, the Defendant acted through its employees acting within the course and scope of their employment.

### FACTS

15. Plaintiff began her employment with Navigant on January 3, 2017.

16. Defendant held the position of Associate Director.

17. On September 30, 2019 William Hannah, an upper manager of Defendant contacted Michele Wieczorek, an employee of customer, Dixon Hughs, and conveyed to Ms. Wieczorek that he was searching within Navigant/Guidhouse for someone to to lead the Clinical Documentation Improvement Department (CDI).

18. In the same conversation William Hannah conveyed to Ms. Wieczorek that he did not have confidence in the Plaintiff.

19. Plaintiff was made aware of the fact that William Hannah had spoken badly about the Plaintiff to a customer.

20. On October 1, 2019, William Hannah told a fellow employee, Allen Frady, that he did not have confidence in the Plaintiff.

21. Plaintiff was made aware of the fact that William Hannah had spoken badly about the Plaintiff to a Allen Frady.

22. On October 9, 2019 Plaintiff became aware that William Hannah thought the Plaintiff was not doing a good job providing service for customer Butler Memorial Hospital.

23. On October 16, 2019 Plaintiff met with William Hannah face-to-face at Butler Memorial Hospital and in that meeting Wiliam Hannah denied he had any problems with the Plaintiff's performance.

24. On October 17, 2019 Plaintiff made complaints to Defendant's Human Resources Department, which Defendant calls the Human Capital Group, regarding Mr. Hannah's speaking negatively about the Plaintiff with other people.

25. Plaintiff also stated to the Human Capital Group that she thought William Hannah's negative attitude toward the Plaintiff was related to her being an older female.

26. Mr. Hannah was made aware of the Plaintiff's complaint about him and he received coaching in response to the Plaintiff's complaint.

27. In December of 2019 Plaintiff again made complaints to the Human Capital Group, regarding Mr. Hannah's hostile attitude toward her, which again included complaints that she felt the hostility related to her being an older woman.

28. In early February of 2020 William Hannah took over leading the Clinical Integrity Team of Defendant.

29. When William Hannah became the head of the Clinical Integrity Team, Plaintiff was one of the Associate Directors of the Clinical Integrity Team and also was the Team Leader.

30. In February of 2020, when William Hannah took over leading the Clinical Integrity Team, William Hannah became Plaintiff's immediate supervisor.

31. Immediately after taking over management of the Clinical Integrity Team, on February 17, 2020, William Hannah reduced the Plaintiff's responsibilities by removing Plaintiff from the position of Clinical Integrity Team Leader.

32. On February 24, 2020 received a Performance Review Score of 2.91 without any written explanation, which score was not warranted.

33. On February 27, 2020 Plaintiff complained to Human Capital about the 2.91 score and her losing her Team Leader position, and expressed concern that her score and loss of position was the result of retaliation for past complaints about William Hannah.

34. In the February 27, 2020 meeting the Plaintiff again raised her concern that William Hannah had gender bias, specifically against older females.

35. On March 3, 2020 William Hannah told Plaintiff she would not be eligible for a bonus and would not be receiving a raise.

36. After William Hannah became Plaintiff's supervisor, William Hannah instructed co-employees not to give excess work to the Plaintiff when the Plaintiff was available to help

37. At meetings where the Plaintiff was present, Mr. Hannah ignored the Plaintiff and conducted the meetings as if the Plaintiff was not even present.

38. On April 17, 2020 Defendant attempted to place Plaintiff on a Performance Improvement Plan which was unwarranted.

39. On April 24, 2020 and on May 26, 2020 Plaintiff contacted management and complained that she was being under utilized even though there was work available for her to do.

40. On July 7, 2020 the Plaintiff was terminated.

41. Defendant claimed, in part, that the Plaintiff's termination was due to a large company wide layoff.

42. While there were some layoffs in July 2020, the July 2020 lay off was not large compared to the size of the company.

43. Plaintiff alleges that the claim that she was simply caught up in a large company lay off was a pretext.

44.     Further, although, on the one hand the Defendant claims the Plaintiff was caught up in a large company layoff to justify her dismissal, they also claim that the Plaintiff was fired for performance issues.

45.     Before Mr. Hannah becoming Plaintiff's supervisor Plaintiff's previous supervisors never complained about the Plaintiff's work performance.

46.     Plaintiff was well-respected by her co-employees.

47.     Plaintiff had an extraordinary work ethic, often times putting in over 50 hours in a work week.

48.     It is denied that William Hannah, the Plaintiff's immediate supervisor and the head of a department that was losing employees, would have had no input in the decision to end the Plaintiff's employment.

49.     Further, William Hannah's retaliatory actions taken before Plaintiff's employment was terminated, particularly his reducing her utilization by barring co-employees from getting help from the Plaintiff, paved the way for Plaintiff's termination.

50.     In July 2020 Penny Mills, another older female in William Hannah's department was also fired.

### VIOLATION OF TITLE VII BASED ON RETALIATION

31.     Paragraphs 1 through 30 above are hereby incorporated by reference.

33.     42 U.S.C. § 2000e-3(a) provides that it is a violation of Title VII for an employer to discriminate against an employee because that employee has opposed or made a claim that discrimination is taking place against a group or person who is protected from discrimination under the law.

32. Defendant's dismissal of the Plaintiff was due to the Defendant retaliating against the Plaintiff due the Plaintiff complaining to the Defendant that William Hannah harbored discriminatory animus toward older female employees, which group the Plaintiff was a member.

33. Defendant has violated 42 U.S.C. § 2000e-3(a) with respect to the Plaintiff.

33. As a result of Defendant's violation of Title VII of the Civil Rights Act of 1964 Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendant for the following damages:

(a) Lost wages from July 7, 2020 to the present and into the future;

(b) Compensatory damages for humiliation, embarrassment and emotional distress;

(c) Attorney fees and costs of litigation;

(d) Punitive damages;

(e) Such other relief as the Court deems appropriate.

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. §§ 951-963**

34. Paragraphs 1 through 33 above are hereby incorporated by reference.

35. Plaintiff dual filed her Charge of Discrimination with both the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.

36. Having dual filed, the Plaintiff has preserved his right to damages under the Pennsylvania Human Relations Act.

37. The actions of Defendant as stated above constitute violations of the Pennsylvania Human Relations Act, specifically, 43 P.S. §955(d) which prohibits employer from discriminating

against an employee because that employee has opposed or made a claim that the employer is discriminating against a person or group protected by the law.

38.     Defendant has violated 43 P.S. §955(d) with respect to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant for the following damages pursuant to the Pennsylvania Human Relations Act.

(a) Lost wages and benefits from July 1, 2020 to the present and into the future;

(b) Compensatory damages for humiliation, embarrassment and emotional distress;

(c) Attorney fees and costs of litigation;

(d) Punitive damages;

(e) Such other relief as the Court deems appropriate.

Respectfully submitted,

By:     s/ John Newborg_____
JOHN NEWBORG, Esq.
Pa. I.D. No. 22276
225 Ross Street, 4th Floor
Pittsburgh, PA 15219
(412) 874-9442
newborglaw@gmail.com